UNITED STATES of America,
Plaintiff–Appellant,

v.

Catherine KEARNS, Defendant–Appellee.

UNITED STATES of America,
Plaintiff–Appellee,

v.

James R. KEARNS, Jr., Defendant–Appellant.

Nos. 92–10426, 92–10436.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1993.

Decided Sept. 23, 1993.

Matthew Heffron, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellant in case no. 92–10426.

Craig Mehrens, Phoenix, AZ, for defendant-appellee in case no. 92–10426.

Mary Kathryn Wisdom, Wisdom, Logan & McNulty, Phoenix, AZ, for defendant-appellant in case no. 92–10436.

Matthew Heffron, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee in case no. 92–10436.

Before REINHARDT, TROTT, and RYMER, Circuit Judges.

REINHARDT, Circuit Judge:

## I. *Background*

In 1989 Sergio and Rosemary Teran were arrested for possession of marijuana with intent to distribute. Sergio's parole was revoked and he was sent back to a federal penitentiary. However, Rosemary agreed in writing to "work off" the charges by acting as an informant for the Glendale (Arizona) Police Department. In prison, Sergio met appellant James Kearns, who was serving a life-sentence. James was often visited by appellee Catherine Kearns, his wife, and her son, and Sergio was visited by Rosemary. During these visits and afterwards, the Kearnses allegedly arranged a large drug transaction with the Terans. Rosemary informed Glendale police of the proposed deal. The Kearnses were indicted for possession of and conspiracy to distribute marijuana. James' and Catherine's cases were severed.

James' trial was set first. Just before trial the prosecutors told his attorney that no

charges had been filed against either Sergio or Rosemary following their 1989 marijuana arrests. They also stated that Rosemary had *orally* agreed to be an informant in exchange for not being charged. After Rosemary had testified and been excused and Sergio's cross-examination had begun, the government informed James' counsel that charges had been filed against the Terans as a result of their marijuana arrests and that Rosemary had agreed to "work off" the charges. The district court denied James' motion for a mistrial but allowed additional cross-examination of the Terans. James was convicted.

Following James' trial, Catherine's began. On the morning of the last day of her trial the government turned over to the defense a copy of a *written* agreement between Rosemary and the Glendale police, which it had obtained from Rosemary's attorney the previous afternoon. Catherine then moved for dismissal of the indictment based on misrepresentations before and during trial as to the existence of a written agreement. At first the court denied Catherine's motion and suggested that Rosemary be brought back for additional cross-examination. However, the judge stated that if he learned that a false statement as to the existence of the written agreement had been made, he would dismiss the charges. The prosecutor responded that the Glendale Police had originally informed him that no written agreement with Rosemary existed based on the fact there was no completed agreement in its files. He offered no further explanation. The court then, true to its word, dismissed the indictment.

Soon thereafter, James made a written post-trial motion to vacate the verdict in his case and to dismiss the indictment, on the same ground underlying the ruling in Catherine's case. The government submitted affidavits in opposition from Glendale police officers. The officers claimed that the failure to disclose the existence of the written agreement was a result of bad memories, miscommunication, inadvertence, misunderstanding, and the lack of a completed copy of the agreement in their files. They stated that

department policy provided that records regarding confidential informants would not be retained, for the informants' safety. Although prior to James' trial an officer had found a draft agreement with Rosemary on the computer, he did not tell his sergeant about it, because he thought only completed documents were relevant. There was no indication that the United States attorney was aware that a written agreement existed until shortly before he received a copy of it. The district judge denied James' motion to dismiss, finding neither flagrant misconduct nor prejudice, and concluding that the sanction of dismissal would not be proportionate to the misconduct involved.

The government then moved for reconsideration in Catherine's case, and attached the same affidavits that had been submitted in opposition to James' motion. The district judge, without explanation, denied the reconsideration motion in a brief written order. The government then filed a timely appeal regarding the dismissal of the indictment against Catherine, and James timely appealed his convictions on the basis of the government's failure to disclose material information.

## II. *Discussion*

### A. *The District Court's Rulings on the Motions to Dismiss the Indictments*

A district court may dismiss an indictment for a violation of due process or pursuant to its supervisory powers. *United States v. Barrera–Moreno*, 951 F.2d 1089, 1091 (9th Cir.1991). To warrant dismissal on due process grounds, government conduct must be so grossly shocking and outrageous as to violate the universal sense of justice. *United States v. Green*, 962 F.2d 938, 941 (9th Cir.1992). We reject Catherine's suggestion that the government's conduct in this case rises to that level.

Dismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice. *United States v. Jacobs*,

855 F.2d 652, 655 (9th Cir.1988) (per curiam). We conclude that the first prong was not met here. Although it is likely that the second was not met either, we need not reach that question. The Glendale Police Department's erroneous response appears to have to have been due to incompetence and other non-invidious factors rather than to intentional deception. Moreover, a written copy of the agreement was turned over to Catherine before the end of trial and within hours of the prosecution's receipt of it. This demonstrates that the federal officials involved did not engage in flagrant misbehavior. For these reasons, the dismissal of the indictment against Catherine on the ground of prosecutorial misconduct cannot stand. For these same reasons, the district court's denial of James' motion to dismiss the indictment for prosecutorial misconduct was not erroneous.

 Catherine next argues that both the government's failure to provide a written agreement in a timely manner and the Glendale Police Department's *policy* of destroying informant agreements are violations of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and, therefore, deprived her of due process. She also argues that Glendale's policy of destroying such agreements is in bad faith. The record does not support the latter contention.[1] As to the alleged *Brady* violations, even assuming that the failure to turn over the agreement in a timely fashion qualifies as such, our precedents make clear that dismissal of an indictment is an appropriate sanction for a constitutional violation only where less drastic alternatives are not available. *Barrera–Moreno,* 951 F.2d at 1093. That standard is not met here. A copy of the agreement was located prior to the end of trial. The district court could have granted a continuance and allowed additional cross-examination of Rosemary based upon the impeachment material in the written agreement. It also could have granted a motion for a new trial. Therefore, the district court's dismissal of the indictment cannot be upheld on *Brady* grounds.

For similar reasons, dismissal would not have been a proper remedy for any violations of the discovery process that may have occurred in James' case.

In sum, the district court erred in dismissing the indictment against Catherine but properly denied James' motion to dismiss.

**B.** *The Government's Failure to Turn over Impeachment Evidence Does Not Warrant a Reversal of James' Conviction.*

 If the government fails to disclose material impeachment evidence regarding government witnesses, then it violates *Brady* and the due process clause. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *United States v. Strifler,* 851 F.2d 1197, 1201 (9th Cir.1988). Requested impeachment evidence is material if it raises a reasonable probability that the result of the proceeding would have been different. *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. Good faith is irrelevant to a *Brady* violation. *Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). James argues that the government's failures to disclose the written informant agreement with Rosemary and turn over Sergio's FBI rap-sheet violate *Brady* and require reversal. The government responds that no violation occurred with respect to the informant agreement because its introduction would probably not have affected the verdict. The government also contends it provided sufficient information as to Sergio's criminal history that reversal is not required.

We agree with the government in both respects. It is true that the written agreement showed that Rosemary was required to do a "deal" of a nature similar to the Kearns deal at the time that deal took place or else the charges against her would not be dropped. It is also true that the testimony at James' trial did not fully bring out the extent of the time pressure on Rosemary. However, Rosemary specifically testified at

---

1. Nevertheless, we strongly disapprove of the policy of destroying written informant agree- ments or agreements pursuant to which prosecution witnesses offer their testimony.

James' trial that she was under time pressure to fulfill her agreement with the Glendale Police. Therefore, we cannot say that there is a reasonable probability that the result of the proceeding would have been different had the precise terms of the written agreement been available to James and the jury. Likewise, in view of the evidence that was provided to the defense regarding Sergio's criminal history, the government's failure to turn over certain details of his record as reflected in his rap sheet does not satisfy the *Bagley* standard, either alone or when taken together with the nondisclosure of the written informant agreement.

## III. *Conclusion*

The performance of the Glendale Police Department regarding the written informant agreement may have been negligent, or even grossly negligent. However, the Department did not engage in flagrant misconduct. Therefore, dismissal of the indictments against the defendants is not warranted. Nor was any failure to turn over impeachment evidence in James' case sufficiently prejudicial that confidence in the jury's verdict is undermined. The judgment in Catherine's case, no. 92–10426, is **REVERSED** and the case **REMANDED** for reinstatement of the indictment and further proceedings consistent with this opinion. The judgment in James' case, no. 92–10436, is **AFFIRMED.**