**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Eural WILLS, II, Defendant–Appellant.**

No. 95–10054.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1996.

Decided June 26, 1996.

Paul B. Meltzer and Rosemarie Braz, Law Offices of Paul B. Meltzer, Santa Cruz, California, for defendant-appellant.

Robin L. Harris, Assistant United States Attorney, San Francisco, California, for plaintiff-appellee.

Before: ALARCON, BEEZER, and RYMER, Circuit Judges.

ALARCON, Circuit Judge:

We must decide whether evidence that a witness is threatened with injury is sufficient to justify a delay in the disclosure of her identity. We hold that evidence that a witness' safety is threatened constitutes good cause to grant an exception to the disclosure requirements of The Notice of Alibi Rule. Fed.R.Crim.P. 12.1.

Eural Wills, II seeks reversal of the judgment on several grounds. We reject each of these contentions and affirm the judgment. We vacate the five year concurrent sentence imposed by the court because of the jury's finding that Wills used a gun during a crime of violence. This court has jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291.

I

In the early morning of October 15, 1993, a masked robber dropped through the roof of the Martinez, California branch of the Bank of America. The robber was armed with a handgun. He carried a backpack. He communicated with an accomplice on the roof through a "walkie-talkie."

Responding to the emergency call of a bank branch manager who had escaped from the bank, police officers arrived at the scene of the crime as the robbery was occurring. Upon learning from the accomplice on the roof of the arrival of the police, the robber fled through the rear exit of the bank. The accomplice threw an incendiary device at the officers. It exploded on impact. At this point, the robber fired at the police. The officers shot their weapons in response. The robber escaped by jumping over a fence. The accomplice also escaped. Lisa Mac-Pheators was waiting in an adjacent residential neighborhood in a Jeep Cherokee which had been rented by Wills. She drove Wills from the scene of the crime. The robber stole $35,760 in $20 denominations.

On January 5, 1994, a federal grand jury returned a five count indictment against Wills. Wills was charged with conspiracy to commit armed bank robbery in violation of 18 U.S.C. § 371, armed bank robbery in violation of 18 U.S.C. § 2113(a) & (d), using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), using a destructive device during a crime of violence in violation of 18 U.S.C. § 924(c), and attempt to escape from custody in violation of 18 U.S.C. § 751(a). On the same day, Wills pled not guilty to each of the five counts. Trial commenced on September 12, 1994. After a seven day trial and an additional four days of deliberation, the jury found Wills guilty of the first four counts and not guilty of the attempted escape charge.

II

Wills contends that the district court "abused its discretion in finding 'good cause' to permit the government to withhold Ms. MacPheators from its alibi rebuttal list and witness list." A district court's decision to grant an exception to the disclosure requirements of Rule 12.1(e) is reviewed for abuse of discretion. *United States v. Portillo,* 633 F.2d 1313, 1324 (9th Cir.1980), *cert. denied,*

450 U.S. 1043, 101 S.Ct. 1763, 1764, 68 L.Ed.2d 241 (1981).

On January 20, 1994, pursuant to Rule 12.1(a) of the Federal Rules of Criminal Procedure,[1] the Government asked Wills to provide the names of any witnesses upon whom he intended to rely to establish an alibi. Five months later, after numerous extensions granted by the district court, on May 12, 1994, Wills provided the name of one alibi witness.

On June 23, 1994, the Government filed an *ex parte* application under seal pursuant to Rule 12.1(e)[2] seeking relief from its obligation to disclose MacPheators' identity to the defense.[3] The request was based on the Government's concern that MacPheators would be harmed if her identity as a Government witness became known to Wills. A Federal Bureau of Investigations ("FBI") report attached to the application stated that MacPheators was concerned about her safety if she were called to testify.[4] In its application, the Government described the violent conduct of the perpetrators of the bank robbery, which included the firing of a weapon and the detonation of an incendiary device. The Government also relied upon facts showing that Wills conspired with others to effect his escape from custody at the Federal Detention Center at Pleasanton ("FDC Pleasanton"). In addition, the Government apprised the court of its attempt to determine MacPheators' suitability for the Witness Protection Program. The court was informed that this process takes several months.

On June 29, 1994, the district court signed an order, filed under seal, relieving the Government of any obligation to disclose MacPheators' identity to the defense until further order of the court. On August 26, 1994, the Government filed a sealed status report. The Government reported that MacPheators

1. Rule 12.1(a) provides in pertinent part:

 Upon written demand of the attorney for the government stating the time, date, and place at which the alleged offense was committed, the defendant shall serve within ten days, or at such different time as the court may direct, upon the attorney for the government a written notice of the defendant's intention to offer a defense of alibi....

2. Rule 12.1(e) provides:

 For good cause shown, the court may grant an exception to any of the requirements of subdivisions (a) through (d) of this rule.

3. The motion in relevant part provided:

 Pursuant to Fed.R.Crim.P. 12.1(e), the United States applies ex parte for limited relief from its disclosure obligations under Rule 12.1(b). The reasons for this request are as follows.

 On May 11, 1994, the defendant notified the government of his intent to rely upon an alibi defense. By stipulation of the parties, and with consent of the Court, the government's written response to defendant's notice is currently due on June 30, 1994.

 On June 15, 1994, FBI agents located and interviewed a witness named Lisa MacPheters [sic].

 ....

 During her interview, MacPheters repeatedly expressed fear that her life would be in danger if defendant learned that she had spoken to the FBI. Ms. MacPheters requested police protection, both at her initial interview and in subsequent conversations with the FBI. The government believes that Ms. MacPheters' concern for her safety is warranted and is exploring the option of the federal witness protection program for her.

 As the Court is aware, this case involves an extremely violent bank robbery in which an armed bank robber (believed to be defendant Eural Wills) cut a hole through the roof of the bank and descended into the bank on a rope. This robber herded hostages into the bank's ATM room and stole approximately $36,000. When the police were summoned (by the branch manager who managed to escape before being spotted), defendant engaged in a lengthy gun battle with police. One of the robbers also threw a bomb at the police. In another case, also pending before this Court, defendant planned an elaborate escape attempt from federal prison. The aborted escape plot contemplated the use of bombs, hand grenades and automatic weapons. Ms. MacPheters is aware of defendant's violent activities; she also claims that she thought defendant planned to kill her after he got into the jeep on the morning of the robbery.

 At this point, the government intends to call Lisa MacPheters as a percipient witness during its case-in-chief. Ms. MacPheters is also the witness upon whom the government intends to rely under Rule 12.1(b) to establish defendant's presence at the bank robbery. However, because of the substantial safety concerns for Ms. MacPheters and her family, the government requests temporary relief from disclosure of her identity.

4. The FBI report stated that MacPheators was "very frightened and was afraid that [Wills] would kill her when they got to Berkeley."

would not participate in the Witness Protection Program. Accordingly, alternative arrangements for MacPheators' safety were being made. The court was also informed that MacPheators' name would not be included on the Government's pretrial witness list. The Government advised the court that it would disclose MacPheators' identity at the pretrial conference.

The Government disclosed its witness list to Wills on August 31, 1994. MacPheators name was not on the list. On the afternoon of September 7, 1994, the Government sent a facsimile to Wills' counsel informing him for the first time that it intended to call MacPheators as a witness, and that she would testify in its case-in-chief. On September 9, 1994, Wills moved for a continuance of the trial date based on the Government's delayed disclosure of MacPheators' identity. The district court denied the motion. It ordered the Government not to call MacPheators as a witness until September 19, 1994, however, to give Wills time to investigate MacPheators.

■ We have not previously addressed the question whether a court may permit the Government to delay disclosure of the identity of a witness whose safety is at risk. Only two other circuits appear to have commented upon this issue.[5]

■ Wills argues that the Government failed to present sufficient evidence that he could have harmed MacPheators. The record belies this contention. The Government presented facts that demonstrated that Wills orchestrated a conspiracy to effect his escape from imprisonment at FDC Pleasanton. The conspiracy involved the procurement of weapons by Wills' brother and the "tak[ing] out" of a prison guard. Wills pled guilty before Judge Fern M. Smith to conspiracy to escape from prison as charged in a separate indictment. Thus, Judge Smith was familiar with facts that support the inference that Wills, although in custody, was capable of inducing others to commit crimes on his behalf. The district court did not abuse its discretion in finding that good cause existed to authorize the Government to delay disclosure of MacPheators' identity.

■ Wills also maintains that the district court erred in conducting an *ex parte* proceeding before ruling on the Government's request for a delay in the disclosure of MacPheators' identity. Rule 12.1(e) is silent as

5. In *United States v. Causey*, 834 F.2d 1277 (6th Cir.1987), *cert. denied*, 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988), the Sixth Circuit held that the Government "did not technically comply with Rule 12.1" where notice that the Government intended to call a rebuttal witness was not given until 24 hours before she was called to testify. *Id.* at 1280. The Government did not assert that good cause existed for its failure to comply with Rule 12.1. The defendant failed to object to this testimony at the time the witness was called. *Id.* at 1281. Accordingly, the court reviewed for plain error. *Id.* In dictum, the court reasoned that there was "adequate support in the record" to demonstrate "the government had good cause for noncompliance with Rule 12.1, and, therefore, the government's noncompliance would be excused pursuant to the *exception* contained in Rule 12.1(e)." *Id.* at 1282. The record indicated "that threats were being made to witnesses in an effort to preclude their testimony." *Id.* The court concluded "[i]n such a situation, the physical safety and protection of potential witnesses constitutes a proper consideration of a trial court in determining whether good cause exists to justify nondisclosure of witnesses to opposing counsel and thus noncompliance with Rule 12.1." *Id.*

In *United States v. Elizondo*, 920 F.2d 1308 (7th Cir.1990), the Seventh Circuit affirmed the trial court's decision not to grant a mistrial, notwithstanding the prosecutor's misconduct in asking questions on cross-examination without a proper factual foundation. The district court denied the motion after the prosecutor represented the he would produce witnesses to demonstrate that there was "a good faith general basis for the question." *Id.* at 1312–13. The Government did not produce these witnesses. *Id.* at 1313. Defense counsel did not object to the prosecutor's failure to comply with Rule 12.1 when the court was informed that the Government intended to call surprise witnesses. *Id.* at 1314. The Seventh Circuit held that the Government's misconduct in asking prejudicial questions without a proper factual foundation did not rise to the level of plain error. *Id.* In passing, the court noted "that the prosecution's intention of using surprise witnesses to rebut [the defendant's] alibi defense seems inconsistent with the prosecutor's duty to provide the defendant with advance notice of the witnesses the government intended to use to rebut the alibi defense." *Id.* The court commented that a witness' identity must be disclosed unless the Government can "establish good cause why no notification was given." *Id.* The court cited *Causey* for the proposition that "physical safety and [the] protection of [a] potential witness justifie[s] earlier nondisclosure." *Elizondo*, 920 F.2d at 1314.

to the nature of the proceeding required to grant an exception.

Wills cites *United States v. Thompson*, 827 F.2d 1254, 1258 (9th Cir.1987) to support the proposition that *ex parte* proceedings are disfavored. Wills' reliance on *Thompson* is misplaced. We reasoned in *Thompson* that "situations where the court acts with the benefit of only one side's presentation are uneasy compromises with some overriding necessity, such as the need to act quickly or to keep sensitive information from the opposing party." *Id.* at 1258. Here, the record shows that an *ex parte* proceeding was required to prevent Wills from learning that MacPheators was going to testify against him. The district court did not abuse its discretion in conducting an *ex parte* proceeding to determine whether good cause existed to believe that a delay in the disclosure of MacPheators' identity as a Government witness was necessary to protect her from harm.

### III

■ Wills next argues that the district court abused its discretion by denying his motion for a continuance of the trial in order to complete his investigation of MacPheators. " 'The decision to grant or deny a requested continuance lies within the broad discretion of the district court, and will not be disturbed on appeal absent clear abuse of that discretion.' " *United States v. Gonzalez–Rincon*, 36 F.3d 859 (9th Cir.1994) (quoting *United States v. Flynt*, 756 F.2d 1352, 1358, amended, 764 F.2d 675 (9th Cir.1985)), *cert. denied*, 510 U.S. 878, 115 S.Ct. 1323, 131 L.Ed.2d 203 (1995). " 'To reverse a trial court's denial of a continuance, an appellant must show that the denial prejudiced [the] defense.' " *Id.* (quoting *United States v. Lewis*, 991 F.2d 524, 528 (9th Cir.), *cert. denied*, 510 U.S. 878, 114 S.Ct. 216, 126 L.Ed.2d 172 (1993)). "A trial court clearly abuses its discretion only if denial of the continuance was arbitrary or unreasonable." *United States v. Torres–Rodriguez*, 930 F.2d 1375, 1383 (9th Cir. 1991).

Wills has not demonstrated that the refusal to grant a continuance prejudiced his defense. Wills' investigator discovered that MacPheators' boyfriend was on felony probation at the time of the bank robbery. This information provided defense counsel with the only defense offered at trial. Wills' attorney argued to the jury that MacPheators identified Wills as the bank robber to protect her boyfriend from further prosecution or imprisonment. The record shows that Wills' investigator attempted to interview Mac-Pheators' family and friends. His efforts were unsuccessful because they were uncooperative. Wills has failed to show that with further time, his investigator would have discovered any additional evidence that would have impeached MacPheators' credibility. *See, e.g., Gonzalez–Rincon*, 36 F.3d at 865 (the defendant must "set forth the substance of the witness testimony she could have obtained if given more time"). The district court did not abuse its discretion by denying Wills' motion for a continuance.

### IV

■ Wills asserts that "the district court should have dismissed the indictment or barred the witness due to prosecutorial misconduct." He maintains that the Government's belated disclosure of MacPheators' scheduled polygraph examination constitutes the type of prosecutorial misconduct that requires the indictment to be dismissed or MacPheators' testimony to be barred. "Motions to dismiss an indictment based on improper government conduct are reviewed de novo." *United States v. Manning*, 56 F.3d 1188, 1198 (9th Cir.1995).

On September 14, 1994, the FBI case agent responsible for investigating this case received a copy of an internal report, prepared by the FBI polygrapher, which contained a summary of statements made by MacPheators on July 16, 1994, the date she was scheduled to take a polygraph examination. Following this interview, MacPheators executed a signed statement. No polygraph examination was conducted. On September 15, 1994, the Government notified Wills' counsel and the court regarding the report. The Government also transmitted the report to counsel by facsimile.

On September 19, 1994, the district court held an evidentiary hearing outside the jury's presence to determine whether any prosecutorial misconduct had occurred. Wills' counsel questioned the FBI case agent and the polygrapher regarding the internal report. The district court denied Wills' motion to dismiss the indictment or to bar MacPheators' testimony. The court found that the FBI investigatory report ("302 report"), that had been previously disclosed to the defense, and the internal report received on September 14, 1994, were virtually identical. The district court ruled:

> I'm not going to dismiss the indictment because at this point, Mr. Meltzer, I have no reason to believe that other than causing you an unnecessary—one more unnecessary day in the library to do this motion, that any harm was really done.
>
> You have the 302. If that's all there really is, then that's all there really is.

A comparison of the two FBI reports shows them to be substantially similar. Wills concedes, in his opening brief, that he had already received the 302 report that referred to the scheduled MacPheators' polygraph examination.

We have reversed a dismissal of an indictment where the Government turned over a written cooperation agreement between an informant and the police on the last day of trial. *United States v. Kearns,* 5 F.3d 1251 (9th Cir.1993). In *Kearns,* we held that "[d]ismissal under the court's supervisory powers for prosecutorial misconduct requires (1) flagrant misbehavior and (2) substantial prejudice." *Id.* at 1253. Here, the Government's behavior was not flagrant. It notified Wills' counsel as soon as it learned of the existence of the report. Moreover, Wills has failed to demonstrate prejudice. The record shows that the 302 report previously disclosed to Wills was substantially similar to the internal report. The district court did not abuse its discretion in determining no harm resulted from the delay in the disclosure of the internal report. *See United States v. Isgro,* 974 F.2d 1091, 1094, 1097 (9th Cir.1992) ("[b]efore it may invoke [its inherent] power, a court must first find that the defendant is actually prejudiced by the mis-conduct. Absent such prejudice—that is, absent ' "grave" doubt that the decision to indict was free from the substantial influence of [the misconduct]'—a dismissal is not warranted") (internal citation omitted), *cert. denied,* 507 U.S. 985, 113 S.Ct. 1581, 123 L.Ed.2d 148 (1993).

### V

Wills argues that the court abused its discretion in denying his motion for a mistrial after MacPheators referred to the fact that she had been scheduled to take a polygraph examination. Wills asserts further that the court's immediate curative instruction exacerbated the witness' misconduct. We review the denial of a motion for a mistrial for abuse of discretion. *United States v. George,* 56 F.3d 1078, 1082 (9th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 351, 133 L.Ed.2d 247 (1995).

On September 19, 1994, the Government called MacPheators as a witness in its case-in-chief. The district court had previously ruled, in response to the Government's motion in limine, that Wills was not permitted to cross-examine MacPheators regarding the scheduled polygraph examination. The following exchange occurred during the cross-examination of MacPheators:

Q: The reason that you can't remember the number of lies is because it's a large number?

A: There's quite a few, yes. But then I did tell the truth.

Q: And you told the truth the day you got your deal; am I right?

A: No.

Q: What's the cutoff date for the truth? When is the day that you told the truth about everything?

A: When I went to Oakland to take the polygraph.

The Court: All right. Ladies and gentlemen, I will instruct you at this point that the last remark should be stricken. There's no evidence or going to be in this case on the issue of polygraph examinations.

In a hearing outside of the presence of the jury, Wills' attorney argued that MacPhea-

tors' reference to her scheduled polygraph examination opened the door to cross-examination on that topic. The court denied the motion to permit cross-examination regarding the scheduled polygraph examination. After the jury returned to the courtroom, the court admonished the jury as follows:

> Ladies and gentlemen, let me clarify the issue that was being discussed when I ordered the recess, and that has to do with the polygraph.
>
> Ms. MacPheators was asked to come to the FBI office where the polygraph examiner is. She did appear. She had an interview with the FBI. She then wrote out a written statement about her participation. Both sides have the information about that statement. And that was the end of it.
>
> She was not, in fact, ever given a polygraph test. However, I'm also alerting you to the fact that even if she had been, polygraph tests are not admissible as evidence in cases such as this to show either the credibility or the lack thereof of any witness.
>
> Therefore, if she had taken an exam it would not have been admissible in this case. However, I'm instructing you that she did not, and that should end any consideration of that issue.

Before this court, Wills argues that "[t]he late disclosure concerning Ms. MacPheators' polygraph only exacerbated the prejudice attached to the earlier nondisclosure of the witness herself." Wills complains that the court refused to take any remedial action following the witness' temporal reference to a scheduled polygraph examination. The argument misrepresents the record in two respects. MacPheators did not take a polygraph examination. Contrary to counsel's argument, the trial judge, acting *sua sponte*, immediately ordered stricken the reference to the fact that MacPheators was scheduled to take a polygraph examination. This swift remedial action was followed by a clear explanation to the jury that no polygraph examination was administered and that results of such examinations are inadmissible.

▮ Wills next argues that MacPheators' reference to the polygraph examination constituted impermissible *prosecutorial* vouching. "As a general rule, a prosecutor may not express his opinion of the defendant's guilt or his belief in the credibility of government witnesses." *United States v. Molina*, 934 F.2d 1440, 1444 (9th Cir.1991). "Such prosecutorial vouching, which consists of either placing the prestige of the government behind the witnesses through personal assurances of their veracity or suggesting that information not presented to the jury supports the witnesses' testimony, is improper." *Id.* at 1445.

▮ Wills does not explain how the Government can be said to have vouched for MacPheators' credibility, or placed its prestige behind her, where the challenged testimony occurred in response to defense cross-examination. We consider the following factors in deciding whether improper vouching has occurred:

> [T]he form of vouching; how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; any inference that the court is monitoring the witness's veracity; the degree of personal opinion asserted; the timing of the vouching; the extent to which the witness's credibility was attacked; the specificity and timing of a curative instruction; the importance of the witness's testimony and the vouching to the case overall.

*United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir.1993). None of these factors are applicable to MacPheators' response to defense counsel's cross-examination. The jury was not told that the prosecutor had extra-record knowledge of MacPheators' honesty. The prosecutor did not argue that MacPheators should be believed because the results of a polygraph examination proved she is truthful. In fact, the court instructed the jury that the witness was not subjected to a polygraph examination.

## VI

▮ Wills maintains that the district court abused its discretion by preventing defense counsel from cross-examining MacPheators regarding the circumstances sur-

rounding the scheduled polygraph examination. We review a ruling to limit the scope and extent of cross-examination for abuse of discretion. *Robertson v. Burlington Northern R.R. Co.*, 32 F.3d 408, 411 (9th Cir. 1994).

Wills contends that the district court's refusal to permit cross-examination regarding the scheduled polygraph examination violated the Confrontation Clause. Wills argues that he was prejudiced because he was denied the opportunity to elicit testimony demonstrating that MacPheators "was not given a polygraph because the agent got the story he wanted—the most believable story implicating Mr. Wills."

We addressed a similar contention in *United States v. Lopez*, 885 F.2d 1428, 1437–38 (9th Cir.1989), *cert. denied*, 493 U.S. 1032, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990). In *Lopez*, the defense attempted on cross-examination to elicit an admission from a government witness that he became upset when learning that one of the defendants had taken and passed a polygraph examination. *Id.* Sustaining the Government's objection, the district court refused to allow inquiry into the circumstances surrounding the polygraph. *Id.* We held that the district court's restrictions on cross-examination regarding the results of polygraph examinations did not violate the defendant's Sixth Amendment confrontation rights:

> [A]llowing cross-examination concerning ... polygraph results would open the door to testimony regarding the circumstances of the polygraph examination and the results, and would lead to the inference that [defendant] had passed the polygraph test. Thus, many of the same concerns would be present that are sought to be avoided in excluding evidence of polygraph results as direct evidence. Given the generally suspect nature of polygraph evidence and the otherwise wide ranging cross-examination of [the witness] that was permitted by the trial judge, the district court's decision to exclude reference to the polygraph was not an abuse of discretion.

*Id.* at 1438.

The district court did not err in prohibiting cross-examination regarding any of the circumstances relating to the scheduled polygraph examination.

## VII

Wills argues that the district court clearly erred in finding that he failed to make a prima facie showing that the Government's peremptory challenges of two jurors during the jury selection demonstrated racial discrimination. "A district court's findings regarding purposeful discrimination in the jury selection process will not be disturbed unless clearly erroneous." *United States v. Vasquez–Lopez*, 22 F.3d 900, 901 (9th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994).

During the voir dire examination of the prospective jurors, the court questioned the jury panel regarding its attitude regarding the Government's reliance on the testimony of an accomplice or a witness who had been granted immunity. Prospective juror Brian Thompson, an African–American, responded as follows:

> Thompson: You said like an accomplice trying to testify against him? Then like maybe they're like putting the rap on him so they could get off?
>
> The Court: Un-hum.
>
> Thompson: I'm skeptical about that.
>
> . . . .
>
> Thompson:—I would feel like that was wrong.

Thompson also stated:

> My cousin's fiance got arrested by the FBI that was looking for him. And like they done something to my family that—they—they broke in their house, I mean—or the FBI, they broke down the door and stuff. And they pulled their guns out. And like that wasn't even right because there was kids, lot of kids in the house, a lot. I don't know if it was—they had—they know my cousin's fiance. But then like I like got a little something against them; you know what I mean?

The Government made a motion to remove Thompson for cause. The district court acknowledged that Thompson was "skating on thin ice," but stated: "that's what perempto-

ries are for. He answered the last question okay. You know, would I take him as a juror if I were you? No." When the Government exercised a peremptory challenge against Thompson, the court commented that it was "not surprising."

The Government also exercised a peremptory challenge against Carolyn Johnson, a prospective alternate juror. Johnson was challenged because of her response to a question in the written jury questionnaire regarding the affect of a witness' race on her ability to be fair and impartial. Johnson answered that she was "affected by different races at times." In response to voir dire questions attempting to clarify her answer, Johnson stated: "I was just speaking in general. Being a Black, African–American ... I just sometimes feel kind of prejudice goes on, you know, but that's just in general." The district court observed that those statements provided "reasonable grounds to assume that that might sway her objectivity."

█ Wills' counsel made a *Batson* motion regarding the Government's exercise of peremptory challenges against Thompson and Johnson. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Under *Batson*, a prosecutor's racially discriminatory use of peremptory challenges constitutes a violation of equal protection. *Id.* at 97, 106 S.Ct. at 1723. The district court denied the motion. Three African–American jurors, including one alternate, were ultimately empanelled.

█ The Government is not required to articulate a race-neutral basis for its peremptory challenges unless the defendant first makes a prima facie showing that "(1) the defendant is a member of a cognizable racial group; (2) the prosecution has removed members of such a racial group; and (3) circumstances raised an inference that the challenges were motivated by race." *Turner v. Marshall*, 63 F.3d 807, 812 (9th Cir.1995).

█ Wills first argues that the "challenge rate itself sufficed to establish the required showing." We have previously held that a peremptory challenge to the only members of a similar racial group on the venire does not constitute a pattern of exclusion sufficient to establish a prima facie case. *United States v. Vaccaro*, 816 F.2d 443, 457 (9th Cir.), *cert. denied*, 484 U.S. 928, 108 S.Ct. 295, 98 L.Ed.2d 255 (1987). The fact that the Government accepted several African–Americans undermines Wills' statistical argument. *See United States v. Chinchilla*, 874 F.2d 695, 698 n. 4 (9th Cir.1989) ("the willingness of a prosecutor to accept minority jurors weighs against the findings of a prima facie case"). The district court did not err in ruling that Wills failed to make a prima facie case of discrimination.

## VIII

█ Wills asserts that the district court erred by refusing to give a cautionary instruction regarding accomplice and informant testimony. Both parties erroneously assert that there is a conflict in this circuit regarding the standard in reviewing this question. To clear up this misconception, we recently stated in *United States v. Duran*, 59 F.3d 938 (9th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995) that "[i]n an attempt to remove any remaining question we reiterate that no conflict exists in the circuit as to the appropriate standard of review for the denial of a defendant's proposed jury instruction." *Id.* at 941. "In general, '[a] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence.'" *United States v. Gomez–Osorio*, 957 F.2d 636, 642 (9th Cir.1992) (citation omitted).

> Logically, if the parties dispute whether the required factual foundation exists, the court should apply an abuse of discretion standard of review. In this case, the ultimate issue is whether 'other instructions, in their entirety, adequately cover that defense theory'.... This is a question of law and, ... should be reviewed *de novo*.

*Id.*

█ The record does not support Wills' contention that MacPheators was a Government informant. Rather, she was an accomplice. Wills was indicted for the robbery of the Martinez branch of the Bank of America six months before MacPheators' identity was

discovered by the FBI. The district court did not err in denying Wills' proposed cautionary instruction regarding the testimony of an informant.

■■■ The district court instructed the jury as follows:

> You have heard testimony from Lisa MacPheators, a witness who has received immunity and who has admitted being an accomplice to the bank robbery. That testimony was given in exchange for a promise by the government that the witness will not be prosecuted for the bank robbery.
>
> In evaluating the witness's testimony, you should consider whether that testimony may have been influenced by the government's promise of immunity given in exchange for it, and you should consider that testimony with greater caution than that of ordinary witnesses.

Wills requested the following instruction regarding the duty of a jury in weighing the testimony of a witness who has been granted immunity:

> You have heard testimony from Lisa MacPheators, a witness who has received immunity. That testimony was given in exchange for a promise by the government that she would not be prosecuted if she did not change her story.
>
> In evaluating Lisa MacPheators' testimony, you should consider whether Ms. MacPheators had a motive to testify falsely and whether her testimony may have been influenced by the government's promise of immunity given in exchange for it, and you should consider that testimony with greater caution than that of ordinary witnesses.

Wills' proposed accomplice testimony instruction provided: "You have heard testimony from Lisa MacPheators who admitted being an accomplice to the crime charged. An accomplice is one who voluntarily and intentionally joins with another person in committing a crime. You should consider such testimony with greater caution than that of an ordinary witness."

The district court's instruction is substantially similar to the two separate instructions requested by Wills. The district court did not err in rejecting Wills' instructions. *See United States v. Joetzki,* 952 F.2d 1090, 1095–96 (9th Cir.1991) (finding no error where the district court rejected defendant's three proposed instructions for mail fraud because the district court's general mail fraud instruction properly covered the law).

## IX

■■■ Wills next challenges the district court's *Allen* charge to the jury. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). An *Allen* charge is traditionally understood as "an instruction to consider the point of view of others" when the jury has reached an impasse in its deliberations. *United States v. Fioravanti,* 412 F.2d 407, 416 (3d Cir.), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969).

■■■ In this case, the *Allen* instruction was part of the original charge. It was not a supplemental instruction given after the jury had informed the court it was deadlocked. We have reasoned that "[t]here is less likelihood of coercion when an 'Allen' instruction is given with the original instructions." *United States v. Williams,* 624 F.2d 75, 77 (9th Cir.1980); *accord United States v. Guglielmini,* 598 F.2d 1149, 1151 (9th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 300, 62 L.Ed.2d 310 (1979).[6]

> In *United States v. Rey,* 811 F.2d 1453, 1458–60 (11th Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 103, 98 L.Ed.2d 63 (1987), the Eleventh Circuit noted that "[t]he modern judicial trend ... is against the Allen charge." While disapproving of the *Allen* instruction, the court believed it was bound by Fifth Circuit precedent to affirm. *Id. See United States v. Bailey,* 480 F.2d 518 (5th Cir.1973) (en banc) (upholding use of *Allen* charge).
>
> Both the District of Columbia Circuit and the Seventh Circuit permit the court to refer to or

---

**6.** We are mindful that the Third Circuit has concluded that an *Allen* instruction should not be given in any criminal proceeding, either at the outset, or after the jury has indicated it is deadlocked. *See United States v. Fioravanti,* 412 F.2d 407, 416 (3d Cir.1969) (barring the use of an *Allen* instruction at any stage of the proceedings), *cert. denied,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); *cf. United States v. Graham,* 758 F.2d 879, 883 (3d Cir.) (use of *Allen* instruction not plain error), *cert. denied,* 474 U.S. 901, 106 S.Ct. 226, 227, 88 L.Ed.2d 226, 227 (1985).

We review a trial court's decision to give an *Allen* instruction for abuse of discretion. *United States v. Gavin*, 959 F.2d 788, 792 (9th Cir.1992), *cert. denied*, 506 U.S. 1067, 113 S.Ct. 1017, 122 L.Ed.2d 164 (1993). "The district court's deliverance of an '*Allen* charge' must be upheld unless it is clear from the record that the charge had an impermissibly coercive effect on the jury." *United States v. Lorenzo*, 43 F.3d 1303, 1307 (9th Cir.1995).

As part of the instructions given prior to the commencement of the jury's deliberations, the court admonished the jury as follows:

> This case has taken a great deal of time and effort to prepare and try. There is no reason to think that it could be better tried or that another jury is better qualified to decide it. It is important therefore that you reach a verdict if you can do so conscientiously. Therefore, if it looks at some point as if you may have difficulty in reaching a unanimous verdict, and if the greater number of you are agreed on a verdict, the other jurors may want to ask themselves about the basis for their feelings when a substantial number have reached a different conclusion. You should not hesitate to reconsider your views from time to time

and to change them if you are persuaded that this is appropriate.

> It is important that you attempt to return a verdict but, of course, only if each of you can do so after having made his or her own conscientious determination. Do not surrender an honest conviction as to the weight and effect of the evidence simply to reach a verdict.

"This circuit evaluates coerciveness on the basis of (1) the form of the instruction; (2) the period of deliberation following the *Allen* charge; (3) the total time of jury deliberation; and (4) the indicia of coerciveness or pressure upon the jury." *United States v. Foster*, 711 F.2d 871, 874 (9th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984).

In *Lorenzo*, we held that an *Allen* instruction was non-coercive where a supplemental *Allen* instruction was given after the jury indicated it could not reach a verdict and the jury deliberated for five and a half hours after the charge was given. 43 F.3d at 1307 n. 3; *see also United States v. Beattie*, 613 F.2d 762, 766 (9th Cir.) (holding that three and a half hours of additional deliberation after receiving a supplemental *Allen* charge was a significant indication of no coercion), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2962, 64

repeat an *Allen* instruction when the jury has informed the court that it has reached an impasse and an *Allen* instruction was included in the original instructions given to the jury prior to the commencement of deliberations. *United States v. Silvern*, 484 F.2d 879 (7th Cir.1973) (en banc); *United States v. Thomas*, 449 F.2d 1177 (D.C.Cir.1971) (en banc).

The Sixth Circuit has upheld a supplemental instruction, given to the jury prior to an indication of deadlock, charging that the jury should "consider carefully the views of [their] fellow jurors and [that] no juror should hesitate to change his or her views if [he or she] is persuaded to do so by the reasoning of [his or her] fellow jurors...." *United States v. Nickerson*, 606 F.2d 156, 159 n. 3 (6th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 528, 62 L.Ed.2d 424 (1979). The *Nickerson* court held that the instruction was not the "controversial, 'dynamite' charge approved in *Allen*." *Id.* at 159. *See United States v. Lewis*, 651 F.2d 1163, 1165 (6th Cir.1981) (same).

The Eighth and the Tenth Circuits have approved the giving of *Allen* instructions as part of the original charge or as a supplemental charge. Both Circuits, however, indicated a preference that the charge be given as part of the original

instructions before a deadlock has occurred. *United States v. Wiebold*, 507 F.2d 932, 934 (8th Cir.1974); *United States v. Wynn*, 415 F.2d 135, 136–37 (10th Cir.1969), *cert. denied*, 397 U.S. 994, 90 S.Ct. 1133, 25 L.Ed.2d 402 (1970).

The Fourth Circuit has upheld a supplemental *Allen* instruction given to a jury after deliberations have begun, but prior to a jury indication that it has reached an impasse. *United States v. Martin*, 756 F.2d 323, 326–27 (4th Cir.1985). The Fourth Circuit has also approved the giving of a supplemental *Allen* instruction after the jury has told the court that it was deadlocked. *United States v. Sawyers*, 423 F.2d 1335, 1339 (4th Cir. 1970).

The First and Second Circuits have approved of supplemental *Allen* instructions given after the jury has indicated that it is deadlocked. *United States v. Vachon*, 869 F.2d 653, 659 (1st Cir. 1989); *United States v. Roman*, 870 F.2d 65, 76 (2d Cir.), *cert. denied*, 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989).

Under the law of this circuit, an *Allen* instruction may be given before the jury begins its deliberations, or after the jury has indicated it is deadlocked. *Williams*, 624 F.2d at 76.

L.Ed.2d 838 (1980). Here, the jury deliberated for four days after receiving an *Allen* instruction. Wills has failed to demonstrate that the *Allen* instruction had a coercive impact on the deliberations.

## X

 Wills argues that the district court abused its discretion "when it answered a jury question by instructing the jury to convict Mr. Wills, rather than simply rereading the relevant instruction." The Government claims that we must review this contention for plain error because Wills did not state the specific grounds for his objection to the proposed response to the jury's inquiry. To object properly, counsel must state "*distinctly* the matter to which that party objects and the *grounds* of the objection." *United States v. Kessi,* 868 F.2d 1097, 1102 (9th Cir.1989) (quoting Fed.R.Crim.Pro. 30). In *Kessi,* we reviewed the court's instruction for plain error, because the defendant "failed to object distinctly to the court's instruction that the profit-sharing agreements were securities." *Id.* The defendant only objected generally to this instruction. *Id.*

 In this matter, the jury sent the district court a note which posed the following question:

> The jury has found that all three counts, 2, 3 and 4, took place under the rules of aiding and abetting. If the defendant is found to be involved in the commission of the crime, does that mean that he is guilty of counts 2, 3 and 4?

The district court advised counsel that "the answer to that is clearly yes."

Defense counsel and the district court had the following colloquy: [7]

> Ms. Braz: Your Honor, I think that the jury's a little confused about what's required for an aiding and abetting verdict in this case. And I think the appropriate thing to do, rather than to just answer the

question, would be the (sic) reread the aiding and abetting instruction.

> The Court: No, I don't think so. I appreciate your making the record, but they don't sound confused at all. They've said they have found that all three counts took place under the rules of aiding and abetting. That doesn't sound like confusion to me. All they want to know is whether that means that he's guilty

> Ms. Braz: Well, we would object to anything other than the rereading of the aiding and abetting instruction.

> The Court: Okay. The jury instruction told them they had to find each and every essential element, and specifically told them that at the request of the defendant. I understand your concern. *I understand your objection,* but there's nothing in this that makes me feel that they don't understand. And therefore I'm going to write simply the answer: Yes. Sign it, date it, and send it in. With the defendant's objection being noted.

(emphasis added).

The record shows that Wills' counsel objected to the court's proposed response to the jury's question. Counsel failed, however, to state the specific ground of the objection. Therefore, we must review the court's response for plain error. "The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) (citation omitted).

 Although Wills' counsel did not articulate the precise basis for her objection, it is quite probable that she believed the court's proposed response was an impermissible comment on Wills' guilt. A district court may not comment on the defendant's guilt. *See United States v. Pena–Garcia,* 505 F.2d 964, 967 (9th Cir.1974) (the district court may not "convey to the jury the impression that [it] has formed an opinion as to the truth of

---

7. It should be noted that Ms. Rose Braz appeared for Mr. Paul Meltzer, Wills' trial counsel, during the proceedings conducted to formulate a response to the jury's question. The district court, however, gave Ms. Braz an opportunity to confer with Mr. Meltzer prior to its response to the jury's question.

the witness' statement or the verdict that should be returned"); *see also United States v. Stephens*, 486 F.2d 915, 917 (9th Cir.1973) ("[j]udicial comments must be aimed at aiding the jury's fact finding duties, rather than usurping them").

We are persuaded that the district court's response to the jury's question was aimed at assisting the jury in the performance of its duties based on its view of the weight and sufficiency of the evidence. The court did not express any opinion regarding its own view about Wills' guilt or innocence. The district court's response did not seriously affect the fairness of the trial.

## XI

Wills argues that the imposition of a thirty year sentence for using a destructive device during the commission of a bank robbery was erroneous as a matter of law. Wills was convicted for using a gun during the commission of a bank robbery and for using a destructive device during the commission of the crime in violation of 18 U.S.C. § 924(c)(1).[8]

Wills makes four arguments in support of his contention that he was erroneously sentenced to thirty years of imprisonment for using a destructive device during the commission of a crime of violence.

■ First, Wills argues that the entry of judgment for both the use of a firearm and the use of a destructive device during the same crime of violence was erroneous as a matter of law. Wills argues that "[b]ecause there was only one underlying felony—the bank robbery—the district court erred when it entered judgment of conviction on both counts." We have held that each section 924(c)(1) conviction must be based on a separate predicate offense. *United States v. Smith*, 924 F.2d 889, 894–95 (9th Cir.1991). In response to this court's request for special

briefing, the Government has forthrightly conceded that it was error to sentence Wills separately for using a gun and for using a destructive device in the commission of the same bank robbery. Accordingly, judgment should have been entered only on one count.

■ Second, Wills asserts that we should be governed by the "principle of lenity" in determining whether to vacate the five year mandatory consecutive sentence for using a firearm during a crime of violence or the thirty year mandatory consecutive sentence for using a destructive device during a crime of violence. Under the "principle of lenity," Wills contends that the district court should have sentenced him only to the five year sentence. We rejected a similar suggestion in *United States v. Martinez*, 7 F.3d 146 (9th Cir.1993), on the ground that "Congress has expressed its 'clear intent to impose more severe penalties for carrying more dangerous weapons.' " *Id.* at 149 (citation omitted). In *Martinez*, we held that "where a defendant is convicted for using multiple weapons under 18 U.S.C. § 924(c)[1], the district court must sentence the defendant according to the most dangerous weapon used or carried in the offense." *Id.* Because the destructive device is the most dangerous weapon used in the offense and because the sentence for using a destructive device is more severe, we vacate the sentence for using a firearm during a bank robbery.

■ Third, Wills maintains that because the jury did not find that he personally used the destructive device during the commission of the bank robbery, the court should have sentenced Wills according to the weapon most closely related to the underlying offense—the firearm. The jury found Wills guilty of using a firearm during the commission of the bank robbery and of using a destructive device during the commission of the same crime as an aider and abettor.

---

**8.** Section 924(c)(1) provides in pertinent part:

Whoever, during and in relation to any crime of violence or drug trafficking (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the pun-

ishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to imprisonment for thirty years.

Wills appears to contend that he cannot be convicted of violating section 924(c)(1) as an aider and abettor. Wills cites no pertinent authority for this proposition.

Wills attempts to distinguish this matter from the factual question presented in *Martinez*. He argues that *Martinez*'s scope is limited by the fact that the case involved the use of two weapons by a single defendant. Wills argues the fact that in this matter there were two perpetrators each using a separate weapon renders *Martinez* inapplicable. We disagree. Nothing in *Martinez* limits its holding to cases involving a single defendant armed with more than one weapon.

Wills also contends that our holding in *Smith* compels us to vacate his sentence for using a destructive device during the commission of the bank robbery. Wills relies on the following language to support this notion: "We reverse on count 8 rather than count 7 because it is unclear whether [the defendant] was in actual or constructive possession of the .38 caliber gun." *Smith*, 924 F.2d at 895 n. 2. Wills has overlooked the fact that we upheld the conviction for the use of the .45 caliber handgun although defendant Martinez did not have actual possession of the weapon. *Id.* at 894–95. We pointed out in *Smith* that:

> In count seven, the indictment charged [the defendant] for Renstrom's possession of a .45 caliber handgun in relation to the count one charge (conspiracy to distribute cocaine) *and* the count six charge (possession with intent to distribute). In count eight, the indictment charged [the defendant] with another section 924(c)(1) violation for the .38 caliber handgun found in the glove compartment of Renstrom's car and used *the same two counts*, counts one and six as the basis for that offense.

*Id.* at 894. *Smith*, thus, undermines Wills' contention.

Here, the jury found Wills guilty of using a firearm during the commission of the bank robbery and of using a destructive device during the commission of the same offense under an aiding and abetting theory. The jury was instructed that to prove Wills guilty

of aiding and abetting, the Government had to prove beyond a reasonable doubt:

> First, the crime stated in the count was committed;

> Second, the defendant knowingly and intentionally aided, counseled, commanded, induced or procured someone to commit the crime; and

> Third, the defendant acted before the crime was completed.

> It is not enough that the defendant merely associated with whomever committed the crime, or was present at the scene of the crime, or unknowingly or unintentionally did things that were helpful to the principal.

The instruction was not challenged.

It is immaterial whether the jury convicted Wills as a principal or as an aider and abettor. *See* 18 U.S.C. § 2(a) ("[w]hoever commits an offense against the United States or *aids, abets*, counsels, commands, induces or procures its commission, *is punishable as a principal*") (emphasis added); *see also United States v. Easter*, 66 F.3d 1018, 1023–24 (9th Cir.) (affirming conviction as an aider and abettor under section 924(c)(1) where defendant argued that he did not know that the other defendants were going to use guns during a bank robbery), *cert. denied*, —— U.S. ——, 116 S.Ct. 547, 133 L.Ed.2d 450 (1995). There is no rational basis for Wills' contention.

Fourth, Wills argues that there was insufficient evidence to support his conviction of aiding and abetting the use of a destructive device during a crime of violence. The evidence is sufficient to support a conviction if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). To support a conviction for using a destructive device during the commission of a bank robbery, there must be sufficient evidence in the record to persuade a rational trier of fact that Wills knew or could have reasonably foreseen that the destructive de-

vice was going to be used by his accomplice during the perpetration of the bank robbery.

The evidence is sufficient to support an inference that Wills knew that his accomplice was using a destructive device during the commission of the bank robbery. The Government introduced testimony at trial that Wills carried a "walkie-talkie" during the bank robbery. Four bank employees testified that Wills communicated with an accomplice during the commission of the offense. The employees testified that the person on the other "walkie-talkie" warned Wills to "[h]urry up. They [are] coming." Further testimony showed that Wills responded "I know ... I'm getting the money.... I'm hurrying." The record supports an inference that Wills was the mastermind of the crime. As such, he was liable for the conduct of his accomplice. The evidence was sufficient to persuade a rational trier of fact that Wills aided and abetted the use of a destructive device in the commission of the bank robbery.

### XII

 Wills contends that the court inappropriately enhanced his sentence by two levels for his role in the offense. He argues that the Government offered no evidence at trial to demonstrate that he was "anything other than a participant" in the bank robbery. "We review the district court's interpretation and application of the United States Sentencing Guidelines ("U.S.S.G.") de novo, while we review the district court's factual findings in the sentencing phase for clear error." *United States v. Oliver*, 60 F.3d 547, 554 (9th Cir.1995).

The district court enhanced Wills' offense by two levels pursuant to U.S.S.G. § 3B1.1(c) for playing an aggravating role in the crime. Section 3B1.1(c) provides: "Based on the defendant's role in the offense, increase the offense level as follows: (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."

The commentary to U.S.S.G. § 3B1.1 states that, among other factors, whether an enhancement for an aggravating role is warranted, are: "[T]he recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1, Application Note 4.

The district court concluded that Wills was the "mastermind" of the bank robbery. The record supports this finding. Wills recruited MacPheators to participate in the offense. Wills paid MacPheators $1,500 for driving the getaway car. Wills kept over $35,000 for his role in the offense. The district court properly enhanced Wills' sentence two levels for his role in the offense. *See United States v. Castro*, 972 F.2d 1107, 1113 (9th Cir.1992) (upholding district court's finding that the defendant was the leader of a conspiracy where circumstantial evidence suggested that the defendant exercised the decision making authority over the conspiracy), *cert. denied*, 507 U.S. 944, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993).

 Wills further asserts that the court's two level enhancement for obstruction of justice was inappropriate. The district court enhanced Wills' base offense by two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1. Section 3C1.1 provides: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." The district court based its enhancement on the fact that Wills conspired to escape from FDC Pleasanton to avoid prosecution under this indictment and Wills' subsequent guilty plea to the charge of conspiracy to escape from FDC Pleasanton. The facts regarding the conspiracy to escape are undisputed.

Wills contends that the enhancement was improper because he "did not escape or attempt to escape from custody." He also asserts that the conspiracy to escape "did not impede the investigation of the instant offense." Wills' contentions lack merit.

The Application Notes to Section 3C1.1 provide that the "adjustment also applies to

any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense *where there is a separate count of conviction for such conduct.*" U.S.S.G. § 3C1.1, Application Note 3(e) (emphasis added). The conspiracy to escape from FDC Pleasanton clearly demonstrates Wills engaged in obstructive conduct to avoid prosecution and sentencing in this matter. The fact the conspirators failed to accomplish their goal does not affect the application of this section.

## XIII

Wills contends that the cumulative effect of the district court's overall conduct deprived him of his right to due process of law. We have reviewed the record regarding each claim of error. The district court's conduct of the trial was error free. Wills was not deprived of his right to due process.

## XIV

The judgment is AFFIRMED. We VACATE the portion of the district court's sentence that imposed a five year sentence for using a gun during the commission of a crime of violence.