68 F.3d 481
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos Pacheco ARIAS, Defendant-Appellant.
 No. 94-50481.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 11, 1995.
Decided Oct. 16, 1995.
 
 Before: BROWNING, NORRIS, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Carlos Arias was indicted and convicted of conspiracy to import cocaine. From 1988 until his arrest in November 1993, Arias was a United States Customs Inspector at the San Ysidro, California Port of Entry. On appeal, he contends that the district court erred 1) in admitting hearsay evidence made by an alleged co-conspirator and 2) in establishing 30 kilograms as the quantity of cocaine for which he is responsible for purposes of sentencing.
 
 Admission of Hearsay Evidence
 
 3
 It is undisputed that Mota, the leader of the alleged conspiracy, made statements to Orduna, the witness whose testimony is at issue, in an attempt to recruit Orduna's girlfriend, Alex Brown, to import cocaine. Orduna testified that he and Mota met several times and that at these meetings Mota tried to recruit him and his girlfriend to work with Mota's organization. Specifically, Mota wanted Orduna to convince Brown, a customs agent who was a fellow employee of the defendant, to let automobiles carrying drugs pass into the United States. Orduna also testified that during their conversations Mota told him that the operation was already in existence and that he had other people working with him. Orduna testified that Mota gave the last names of some of those individuals: "Arias," "Reynoso," and another last name that Orduna could not remember.
 
 
 4
 The district court did not err in admitting this testimony under the co-conspirator exception to the hearsay rule, which allows admission of "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).
 
 
 5
 Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule. There must be evidence that there was a conspiracy involving the declarant and the nonofferring party, and that the statement was made "during the course and in furtherance of the conspiracy."
 
 
 6
 Bourjaily v. United States, 483 U.S. 171, 175 (1987).
 
 
 7
 The government established by a preponderance of the evidence the existence of the charged conspiracy and Arias' connection to it. United States v. Crespo De Llano, 838 F.2d 1006, 1017 (9th Cir. 1987). However, Arias contends that the statement was not made "during" and "in furtherance" of the conspiracy. Id.
 
 
 8
 "During" the Course of the Conspiracy
 
 
 9
 To be admissible under Rule 801(d)(2)(E), there must be sufficient evidence that the statement was made while the conspiracy was in existence. United States v. Kearns, 61 F.3d 1422, 1426 (9th Cir. 1995). The district court did not clearly err by finding that such was the case.
 
 
 10
 The precise date on which the statement at issue was made is not known. The evidence is only that it was sometime in May or June of 1993, and, in any event, prior to July 4 -- the date on which Mota revoked his offer to Brown to become a part of his operation. The government established that the pattern of phone calls from Arias to Mota continued well into the month of July. Specifically, Arias made calls to Mota on July 5, July 11, and July 17. Given the timing and circumstances of the calls from the defendant to the leader of the conspiracy, including the call made by Arias on the same day as his conversation with Brown regarding Mota's offer, it was not clearly erroneous for the district court to infer that the continuation of the calls until at least the middle of July showed that the conspiracy continued after July 4.[1]
 
 
 11
 "In Furtherance" of the Conspiracy
 
 
 12
 Arias contends the government did not present sufficient evidence to show the statement in question was in furtherance of the same conspiracy for which he was charged. He contends it is equally likely that Mota was involved in a series of conspiracies. To support his contention that the statement in question was not made in furtherance of the charged conspiracy, Arias cites a series of cases in which we have found co-conspirator statements not to be in furtherance of a particular conspiracy either because the statements did not further the objectives of the conspiracy, see e.g., United States v. O'Connor, 737 F.2d 814, 821 (9th Cir. 1984), cert. denied, 469 U.S. 1218 (1985) (statement not made to induce participation in the charged conspiracy did not further the conspiracy); United States v. Traylor, 656 F.2d 1326, 1333 (9th Cir. 1981) (same), because the statements were made to facilitate a new conspiracy, see e.g., United States v. Fielding, 645 F.2d 719, 727 (9th Cir. 1981) (statement made to induce participation in a non-existent future conspiracy not in furtherance of charged conspiracy); or because the statements were made the charged conspiracy ended, see e.g., United States v. Vowiell, 869 F.2d 1264, 1270 (9th Cir. 1989) (statement made after conspiracy ended not in furtherance of charged conspiracy).
 
 
 13
 It was not clearly erroneous for the district court to determine that the purpose of the statement was to induce Brown to participate in an on-going conspiracy in which Arias was already a participant. There is no evidence in this case that the charged conspiracy ended. As we indicated above, the conspiracy at issue here continued until at least the middle of July. Moreover, the government presented evidence that Mota told the undercover government agent he had several other individuals working with him in the charged conspiracy. In addition, as discussed above, the government presented evidence suggesting Arias made a warning phone call to Mota about Brown's communications with Customs Internal Affairs on the same day Mota revoked his offer to bring Brown into the operation. Thus, the government did present evidence independent of the statement itself that showed Mota was inviting Brown to participate in the same conspiracy in which Arias was already involved, not inviting her to join a different, new conspiracy. United States v. Castaneda, 16 F.3d 1504, 1507 (9th Cir. 1994).
 
 
 14
 Thus, the trial court did not err in concluding that the statement in question was made during the course of and in furtherance of the conspiracy and that the statement was admissible under Fed. R. Evid. 801(d)(2)(E).
 
 
 15
 Responsibility for Negotiated Amount of Cocaine
 
 
 16
 Arias argues that the district court erred in holding him responsible for the negotiated amount of cocaine -- 30 kilograms. He claims that the court relied on the jury's determination of the amount of cocaine involved to determine the amount for which he is responsible.
 
 
 17
 The amount of contraband attributable to a defendant is a matter for the sentencing court to determine at sentencing, and the court is not bound by the jury's determination of the amount involved. United States v. Egbuniwe, 969 F.2d 757, 763 (9th Cir. 1992). In this case, the district court did not rely on the jury's verdict to determine the quantity of cocaine for which Arias was responsible. To the contrary, the district court made an explicit finding that Arias was being held accountable for the negotiated amount.[2]
 
 
 18
 The district court properly sentenced Arias based on the negotiated amount of cocaine. When sentencing a defendant for an incomplete drug conspiracy, the sentencing court may base the sentence upon the negotiated amount of drugs. U.S.S.G. Sec.2D1.1, app. n. 12. This court has rejected the argument that "a 'negotiated amount' in reverse sting operations reflects police objectives rather than the degree of the defendant's guilt." United States v. Frazier, 985 F.2d 1001, 1003 (9th Cir. 1993). We have consistently held that "liability for a conspiracy turns on the object rather than on the fruits of that conspiracy." Id. Arias does not dispute that 30 kilograms of cocaine, as the amount negotiated by Mota and the undercover government agent, was the object of the conspiracy. The Sentencing Guidelines require that the object of the conspiracy, not the actual amount imported, determine the quantity for sentencing. Thirty kilograms of cocaine, an amount easily concealed in a vehicle passing through the border, was an amount reasonably foreseeable by Arias.
 
 
 19
 The district court did not err in holding Arias responsible for the negotiated amount of 30 kilograms of cocaine.
 
 
 20
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The July 4, 1993 call could reasonably be inferred to be a warning call from the defendant to Mota. Three to four hours after Brown spoke with the defendant, Mota told her that he heard that she was nervous about his proposal and that he was retracting the offer
 The fact that the defendant can suggest an innocent explanation for some or all of the calls does not require the district court to conclude that they were not part of the conspiracy. The district court did not err when it rejected defendant's explanations and found the calls to constitute incriminating evidence.
 
 
 [2]
 The district court made the following finding:
 I understand your argument that the agents, by the reverse sting, part of it, are able to set the amount. They could negotiate for higher; if they chose more than 30 kilograms, then you would even have a higher base offense level, and that's been tested by other defense counsel in other cases.
 I don't think, under the circumstances of this case, that it is an egregious result to hold Mr. Arias to the negotiated amount, and so I'm going to overrule your objection.