**Randy GROVE, suing individually and on behalf of all others similarly situated, Plaintiff,**

**v.**

**John J. KADLIC, Justice of the Peace; Washoe County; and Does 1–10, Defendants.**

No. CV–N–96–494–ECR.

United States District Court, D. Nevada.

May 5, 1997.

---

Terri Keyser–Cooper, Santa Cruz, CA, for Plaintiff.

Melanie Foster, Deputy District Attorney, Reno, NV, for Defendants.

## ORDER

EDWARD C. REED, Jr., District Judge.

This is an action arising under 42 U.S.C. § 1983 and state law for declaratory and injunctive relief against Washoe County, Nevada ("Washoe County"). Plaintiff Randy Grove ("Plaintiff"), a former inmate of the Washoe County jail, challenges the constitutionality and legality of Washoe County's pursuit of reimbursement from him for the costs of his incarceration. Amended Compl. (Doc. # 34). Defendant Washoe County has moved for dismissal and summary judgment. Doc. # 35. For the reasons outlined below, this motion is GRANTED.

### BACKGROUND

On November 29, 1995, Plaintiff appeared in Washoe County Justice Court. Pl.'s Prelim. Inj. Mot. at 3 (Doc. # 2). He had been arrested the day before for nonpayment of traffic fines. *Id.* It is undisputed that the Justice of the Peace, without specifically inquiring into his financial status or advising him of any right to counsel, sentenced Plaintiff to 18 days in jail. *Id.*, Ex. 1. Plaintiff actually spent 21 days in jail, for which he was billed a total of $630.00 under the "cost of incarceration" statute, 1995 Nev.Stat. 333.[1]

---

1. 1995 Nev.Stat. 333, codified at Nev.Rev.Stat. Ann. §§ 211.241–.249 (Michie 1996), allows Defendant to seek reimbursement only from "nonindigent prisoner[s]." Nev.Rev.Stat.Ann.

*Id.*, Ex. 2. He has been paying off this bill at a rate of $10.00 per month. Mot. to Dismiss at 6 (Doc. # 35).

On August 2, 1996, Plaintiff filed suit in this Court against Washoe County and Justice of the Peace John Kadlic, seeking temporary, preliminary, and permanent injunctive relief, declaratory relief, and class certification. Compl. (Doc. # 1). He alleged that the Washoe County Justices of the Peace have a policy of automatically converting fines for nonjailable offenses into jail time, in violation of both Nev.Rev.Stat.Ann. §§ 176.065–.075 (Michie 1996) and the federal Constitution pursuant to *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). *Id.* at 1, 6, 8, 9. He also alleged that Washoe County has a policy of billing indigent jail inmates for the cost of their incarceration, in violation of 1995 Nev.Stat. 333, codified at Nev.Rev.Stat.Ann. §§ 211.241–.249 (Michie 1996) ("the statute"), due process, and fundamental fairness. *Id.* at 9. He also claimed that he is now indigent, and has been at all relevant times; this is in dispute. Mot. to Dismiss at 6 (Doc. # 35).

On November 1, 1996 this Court dismissed Plaintiff's Complaint and denied as moot his motions for preliminary injunction and class certification. Order (Doc. # 32). Because we dismissed in part sua sponte, we granted leave to amend, and on November 18 Plaintiff filed an Amended Complaint. *Id.*; Amended Compl. (Doc. # 34). In his Amended Complaint Plaintiff names as a defendant only Washoe County, but adds claims for relief based on the Eighth Amendment (Excessive Fines Clause), double jeopardy, and state law malicious abuse of process. Amended Compl. at 13–18 (Doc. # 34). Plaintiff has not renewed his motions for preliminary injunction and class certification.

Defendant has again moved for dismissal and/or summary judgment. Mot. to Dismiss (Doc. # 35). Plaintiff opposed (Doc. # 36) and Defendant replied (Doc. # 37), and this motion is now ripe.

## DISCUSSION

### I. Standing—Challenge to the Statute

This Court has an independent obligation to examine its own subject matter jurisdiction, including standing. *Benavidez v. Eu*, 34 F.3d 825, 830 (9th Cir.1994); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (standing is a jurisdictional issue). Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Fed.R.Civ.P. 12(h)(3). Previously we determined sua sponte that Plaintiff lacked standing to sue Judge Kadlic, but determined (on the briefs) that Plaintiff had standing to sue Washoe County. Order at 8 (Doc. # 32). Our analysis of Washoe County's standing was cursory, however, and although Defendant does not dispute the issue we think it important enough to merit further discussion. *Id.*; Reply at 3(# 37).

█ In order to have standing, a plaintiff must show 1) the existence of a concrete, particularized, and actual or imminent invasion of a legally protected interest—an "injury in fact," 2) that this injury is fairly traceable to the challenged action of the defendant, and 3) that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Defenders of Wildlife*, 504 U.S. at 560–61. At the pleading stage, general factual allegations may suffice to establish standing. *Id.* However, the court may base its determination of subject matter jurisdiction on the resolution of disputed

§ 211.2415 ¶ 1 (Michie 1996). Prisoners must complete a financial statement, under penalty of perjury, before Defendant may request reimbursement from them. *Id.* at § 211.242. Once this financial statement is completed, and at any time after conviction, Defendant may issue a written demand for payment, and prisoners may either pay in full upon receipt or arrange for payment by monthly installments. *Id.* at § 211.244. If a prisoner fails to make a payment within ten days after it is due, the Washoe Coun-

ty District Attorney may seek recovery through a civil action. *Id.* at § 211.245. Although the statute provides no explicit definition of "nonindigent," it does require the county treasurer to determine how much a prisoner owes before the start of a civil recovery action; the county treasurer may very well find that many prisoners owe nothing due to indigency. *Id.* Moreover, when the District Attorney brings a recovery action, presumably "indigency" is available as an affirmative defense.

facts outside the pleadings. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir.1989).

In this case, the Amended Complaint indicates that Plaintiff owes $630.00 in costs arising from his incarceration; as of July 1996 he still owed $540.00. Opp'n at 10 & Ex. 6 (Doc. # 26). He signed a "statement" dated December 19, 1995 which informed him that if he failed to pay his account would be turned over to the Washoe County Collections Division. Amended Compl. at Ex. 5 (Doc. # 34). Grove interpreted this document as a bill and Defendant does not dispute the interpretation. Grove Aff. at 3 (Doc. # 34, Ex. 1); Mot. to Dismiss (# 35). It appears to be the only bill he has ever received; nonetheless, he has remitted at least nine monthly payments of $10.00, most of which have been paid by his mother. Mot. to Dismiss, Ex. A (Doc. # 10).

■ As we noted previously, Plaintiff's payment of Washoe County's bill is a deprivation of money (i.e., an injury in fact) resulting from Washoe County's "statement" (i.e., fairly traceable to Defendant's conduct) which Washoe County would be forced to disgorge pursuant to a judgment in Plaintiff's favor (i.e., which could be redressed by a successful outcome to this litigation). Order at 8(# 32). We therefore held, and continue to hold, that he has standing to sue Washoe County under the *Defenders of Wildlife* test. *Id.* This is the law of the case and Defendant does not question it. Reply at 3 (Doc. # 37).

Our previous analysis was sketchy, however, and we deem it necessary to address standing in more detail both because Plaintiff devotes the better part of his Opposition (Doc. # 36) to the issue and because standing has been dispositive in similar cases before this Court. For example, if Plaintiff were still incarcerated in Washoe County jail, he would *not* have been "billed" yet and therefore any injury fairly traceable to Defendant's conduct would be purely hypothetical. These are basically the facts of *Cordova v. Kirkland*, CV–N–95–605–ECR, a case we dismissed for lack of standing. In the present case, Grove has been billed, and has paid; his injury is therefore not "hypothetical." As another example, if Plaintiff had been billed, but had left the area without providing a

forwarding address and had made no efforts to pay the bill, he likewise would have suffered neither actual injury—since he had not paid—nor imminent injury—since Washoe County would have been hard pressed to initiate legal action against him. These are basically the facts of *Hill v. Kirkland*, CV–N–95–667–ECR, a case which we also dismissed for lack of standing. Grove, by contrast, has paid his bill and has apparently continued to live in Washoe County, although at no fixed address. His injury is therefore real and, if he discontinues payment, Washoe County will be more likely to initiate a collection action against him than against Hill.

■ There remains a problem which we struggled with in *Cordova* and *Hill:* if Plaintiff is truly indigent, then he need not pay; if he need not pay, then his financial deprivation is one of his own making; if his deprivation is one of his own making, then it is not fairly traceable to Defendant's actions. In other words, that Grove paid his bill satisfies the first prong of *Defenders of Wildlife*, but that he did so "voluntarily" arguably constitutes a failure to satisfy the second prong. Although a close question, on the facts of the instant case we think the second prong is satisfied.

We reason by analogy. Suppose Grove had sued the Internal Revenue Commissioner in federal District Court for a tax refund; that is, suppose he had received a notice of deficiency, had paid it, and had then sued to get his money back (after exhausting his administrative remedies)—plainly Grove would have Article III standing in such a case. 26 U.S.C. § 7244. Similarly, in the instant case Grove received a bill, paid it, and now is suing to get his money back (among other things) Surely if "voluntary" payment of an allegedly erroneous tax deficiency gives standing then "voluntary" payment of an allegedly erroneous bill for incarceration costs gives standing as well. *See Defenders of Wildlife*, 504 U.S. at 573, 112 S.Ct. at 2143 (a statutory right to sue is alone insufficient to give constitutional standing; a plaintiff must have suffered an injury in fact). That Grove may have made payments on Washoe County's bill knowing that the bill was erroneous and unlawful does not undercut his satisfac-

tion of the "fairly traceable" prong, since his payments were clearly in response to the bill.

In short, Plaintiff has standing to challenge the statute and Washoe County's implementation of it. This does not mean that all of his claims are justiciable, however.

## II. Standing—Procedural Challenge to Grove's Incarceration

Plaintiff began this action by suing both Washoe County and Justice of the Peace John Kadlic. Complaint (Doc. # 1). He sued Kadlic on the grounds that Kadlic had violated his constitutional rights in sentencing him to jail for a non-jailable offense, a claim we dismissed for lack of standing, as discussed above. Order (Doc. # 32). Plaintiff now sues Washoe County for the same constitutional violations—namely, for "permitting sentencing judges in Washoe County to send offenders like Grove to jail for non-payment of fines." Amended Compl. at 15 (Doc. # 34).

We have closely examined both Plaintiff's Amended Complaint and his Opposition and we discern no difference between the current and the former challenges to the procedure employed in sentencing him, except for the identity of the defendant. Plaintiff has again failed to show a concrete and imminent injury within the meaning of *Defenders of Wildlife*; that he now sues a different defendant makes no difference. Indeed, if anything his lack of standing is even more acute now, since he can no longer distinguish *Eggar v. City of Livingston* on the

ground that the judge in *Eggar* was not a party. 40 F.3d 312, 316–17 (9th Cir.1994) (declaratory and injunctive relief unavailable where future harm is conjectural); *see* Order at 5 n. 1 (Doc. # 32).

In fact, Plaintiff has totally failed to distinguish *Eggar* on any ground. He attempts to establish justiciability by noting that Washoe County is not immune from prospective relief. Opp'n at 7 (Doc. # 36). Whether this is so is beside the point, since standing is a separate jurisdictional hurdle.[2] *Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. at 2136. As the parties have now briefed the issue of standing to challenge the validity of Grove's incarceration, our dismissal of that challenge is not sua sponte and we need not grant further leave to amend solely on that basis.[3] We also need not address those challenges to the statute which in actuality are challenges to Grove's imprisonment.

## III. Failure to State a Claim

Dismissal for failure to state a claim is appropriate when it appears to a certainty that a plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996). All allegations of material fact are taken as true and construed in the light most favorable to plaintiff. *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir.1996). Review is limited to the contents of the complaint; if matters outside the pleadings are submitted, the motion to dismiss is treated as

**2.** Plaintiff spends the better part of six pages in his Opposition attempting to demonstrate that declaratory relief is appropriate in spite of the standing problem. Opp'n at 3–9 (Doc. # 36). This is puzzling, since we have never held otherwise. We did conclude, based upon *Eggar*, 40 F.3d at 316–17, and *Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985), that declaratory relief alone was unavailable against Judge Kadlic, since a declaratory judgment would "either fail to redress Plaintiff's injury or violate principles of comity." Order at 7 (Doc. # 32). This last statement, admittedly somewhat conclusory, appears to be the source of Plaintiff's confusion. Our point is, if Plaintiff lacks standing to seek an injunction against future violations—because such violations are conjectural—and cannot pursue damages against a state court judge—because of sovereign and judicial immunity—then a declaratory judgment

without any possible relief would be a waste of time. In any event, there appears to be no Eleventh Amendment bar to suing Washoe County for its application of the statute. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

**3.** We reiterate that there are other avenues of relief available, such as direct appeal or a complaint to the Nevada Commission on Judicial Discipline. We particularly note that Plaintiff may petition for habeas corpus, and that even if he had standing in this case, a § 1983 action is not cognizable where, as here, a plaintiff challenges the fact or duration of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973); *Chacon v. Wood*, 36 F.3d 1459, 1463 (9th Cir.1994).

one for summary judgment. *Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996); *Allarcom Pay Television, Ltd. v. General Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995). On a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim. *Defenders of Wildlife,* 504 U.S. at 561, 112 S.Ct. at 2136 (quotation omitted). However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *In re Stac Electronics Sec. Litig.,* 89 F.3d at 1403.

Plaintiff claims, loosely speaking, that Washoe County's "policy of determining indigence" and application of the statute to those "who lack resources to pay outstanding fines" violate the Excessive Fines, Double Jeopardy, Due Process, and Equal Protection Clauses. Amended Compl. at 17–19 (Doc. # 34). In addition, he claims that Washoe County intends to engage in "Malicious Abuse of Process" by so determining indigence and applying the statute. *Id.* at 18.

### A. Malicious Abuse of Process

■ Plaintiff can prove no set of facts in support of this claim which would entitle him to relief. The primary reason for this is that no tort of "malicious abuse of process" exists under Nevada law. In fact, Plaintiff has not only failed to clarify or pinpoint which state cause of action he sues under, but has also failed to even address Defendant's arguments against it, implying that under Local Rule 7-2(d) he consents to its dismissal.

■ The secondary reason why this claim fails is that, even if we were inclined to construe his pleading liberally, he cannot succeed. "Malicious prosecution" requires a showing of 1) a lack of probable cause to commence a prior action, 2) termination of the prior action in the plaintiff's favor, 3) malice, and 4) damages. *Dutt v. Kremp,* 111 Nev. 567, 894 P.2d 354, 357 (1995). "Abuse of process" requires a showing of 1) an ulterior purpose other than resolving a legal dispute, and 2) a willful act in the use of process

not proper in the regular conduct of the proceeding. *Id.* 894 P.2d at 360.

■ But the Amended Complaint itself states that neither process nor commencement of a collection action has yet occurred: Washoe County *"intends* to maliciously use these policies as a means of harassing, intimidating, and forcing indigents to relocate from Washoe County," and "the Washoe County District Attorney *may* seek recovery through a civil action." Amended Compl. at 12, 18 (emphasis added) (Doc. # 34). A conclusion that Plaintiff can prove the elements of either state law action would surely constitute an unwarranted inference, and Plaintiff can therefore prove no set of facts consistent with the allegations of his Amended Complaint which would entitle him to relief on his "malicious abuse of process" claim.[4]

### B. Excessive Fines

As discussed above, Plaintiff lacks standing to challenge the procedure used to incarcerate him, but possesses standing to challenge the statute and Washoe County's implementation of it. Because his Amended Complaint presupposes that he has standing as to both issues, we must narrow the individual claims for purposes of a 12(b)(6) motion.

■ Excessive Fines analysis proceeds in two steps: first, whether a payment, "in cash or in kind, [i]s punishment for some offense," and second, "whether the particular sanction in question is so large as to be 'excessive.' " *U.S. v. Ursery,* — U.S. ——, ——, 116 S.Ct. 2135, 2146, 135 L.Ed.2d 549 (1996); *Austin v. U.S.,* 509 U.S. 602, 610, 113 S.Ct. 2801, 2805, 125 L.Ed.2d 488 (1993). In this case, Grove has alleged both elements. Amended Compl. at 14 (# 34). However, our analysis does not end here, since it may be that either or both questions may be answered by the Court as a matter of law.

■ Clearly, the second step requires factual analysis, so that a mere allegation of excessiveness suffices to survive a 12(b)(6)

---

**4.** Although Defendant's affidavit of James Barnes is probably sufficient to entitle Washoe County to summary judgment at least as to malicious prosecution, we need not rely on it here since it is clear that Plaintiff has failed to state a claim either for malicious prosecution or for abuse of process. Reply, Ex. A (Doc. # 37).

motion. *U.S. v. One 1978 Piper Cherokee Aircraft,* 91 F.3d 1204, 1210 (9th Cir.1996). Whether the first step is a question of fact or a question of law is a more difficult issue. Recent Supreme Court cases imply that it is a question of law. *Austin,* 509 U.S. at 611–22, 113 S.Ct. at 2806–2812 (examining historical evidence, statutory language, and legislative history to conclude that civil forfeiture is subject to the Excessive Fines Clause, and remanding only for an excessiveness inquiry); *Alexander v. U.S.,* 509 U.S. 544, 558–59, 113 S.Ct. 2766, 2775–76, 125 L.Ed.2d 441 (1993) (concluding that criminal forfeiture is subject to the Excessive Fines Clause, and also remanding only for an excessiveness inquiry); *Browning–Ferris Industries v. Kelco Disposal,* 492 U.S. 257, 262–76, 109 S.Ct. 2909, 2913–21, 106 L.Ed.2d 219 (1989) (examining historical evidence to conclude that punitive damages awards in cases between private parties are not subject to the Excessive Fines Clause). Two Ninth Circuit cases also hint that it is a question of law. *U.S. v. Kearns,* 61 F.3d 1422, 1428 (9th Cir.1995) (concluding from case law that foreclosure on real estate, after voluntary dismissal of forfeiture complaint, is not punishment triggering the Excessive Fines Clause); *Little v. C.I.R.,* 106 F.3d 1445, 1454–55 (9th Cir.1997) (concluding from case law that additional civil tax penalties for negligence and substantial tax underpayment are not punishment). At least one other Circuit has also so hinted. *U.S. v. Alt,* 83 F.3d 779, 781 (6th Cir.1996) ("The [legal] sole issue before us is whether the assessment of tax penalties is another 'punishment.' ").

 We think it safe to conclude that the question of whether a payment is "punishment" is a question of law decidable on a motion to dismiss, and that the statute here constitutes punishment. *See U.S. v. $405,-089.23 U.S. Currency,* 33 F.3d 1210, 1220 (9th Cir.1994), *as amended* 56 F.3d 41 (9th Cir.1995) (character as punishment determined by looking at the relevant statute). It only applies to inmates who have been convicted of crimes, and not to those who are incarcerated only for pretrial detention. Nev.Rev. Stat.Ann. § 211.2415. This sets it apart from a "user fee" statute, for example. A court may order a prisoner to perform supervised work, reducing the prisoner's bill by eight dollars per hour; such an enforcement measure is of course unavailable for most non-punitive civil debts. *Id.* at § 211.244. Failure to provide personal financial data in accordance with the statute precludes receipt of good time credits while incarcerated. *Id.* at § 211.246. Unlike the "administrative fee" statute (applicable to inmates incarcerated intermittently), enforcement of the debt by contempt of court is not explicitly prohibited. *See id.* at § 211.350. Taken as a whole, though mostly rationally related to the costs of jailing inmates, the statute "cannot fairly be said *solely* to serve a remedial purpose," and is therefore best understood "at least in part as punishment."[5] *Austin,* 509 U.S. at 610, 611, 621, 113 S.Ct. at 2805, 2806, 2811 (emphasis in original). Plaintiff's Excessive Fines Clause claim therefore survives Defendant's motion to dismiss.

## C. Double Jeopardy

 As a preliminary matter, we must determine which of the three available Double Jeopardy tests to apply. *See U.S. v. McClinton,* 98 F.3d 1199, 1202 (9th Cir.1996) (citing *U.S. v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)). As the present case most closely resembles an *in personam* civil penalty case, as opposed to an *in rem* civil forfeiture or tax penalty case, the best test to apply is the one in *U.S. v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). *Halper* holds that a defendant "may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial," where "remedial" means

---

5. *U.S. v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), makes clear that determination of "punishment" for Excessive Fines purposes is conceptually distinct from such a determination for other purposes, and that such a determination here is "categorical" rather than "case-specific." —— U.S. at ——, ——, 116 S.Ct.

at 2144, 2147. Accordingly, we apply the extremely strict "solely remedial" standard from *Austin* in examining the statute. *But see Little,* 106 F.3d at 1454–55 (statute not punitive even when it is "primarily" remedial and serves to "deter noncompliance with the tax laws").

"making the Government whole." [6] *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902. At bottom such a test is one of proportionality: "a court must compare the harm suffered by the Government against the size of the penalty imposed." *Ursery*, —— U.S. at ——, 116 S.Ct. at 2145; *U.S. v. Walker*, 940 F.2d 442, 443 (9th Cir.1991) (interpreting *Halper* as being mainly about disproportionality); *McClinton*, 98 F.3d at 1202 (reaffirming *Walker* in the wake of *Ursery* ). That is, the threshold issue in determining whether a payment is "punishment" for Double Jeopardy purposes is whether it is "disproportionate to the damages caused to the government." *Walker*, 940 F.2d at 443.

▇▇▇▇ Thus, unlike the inquiry for Excessive Fines purposes, Double Jeopardy analysis requires a particularized examination of whether "the sanction as applied in the individual case serves the goals of punishment" by being disproportionate to the harm caused, an analysis requiring examination of the facts of a specific case. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1901. This implies that "punishment" is a question of fact; because Plaintiff alleges that the bill he has been paying is "disproportionate to the damage Grove has caused," we must consider Grove's bill in the context of summary judgment. Amended Compl. at 14 (Doc. # 34). Plaintiff's Double Jeopardy challenge therefore survives Defendant's motion to dismiss.

### D. Due Process

In our prior Order, we 1) hinted that Plaintiff did not specify whether he was bringing a procedural or substantive due process claim, and 2) ruled that, as to substantive due process, he had failed to identify any right allegedly violated by Washoe County. Order at 9–12 (Doc. # 32). Plaintiff's Amended Complaint corrects both these defects by alleging what appear to be three substantive due process violations: "[ (1) ] The punishment for those who are indigent like Grove, is substantially higher than the punishment for other citizens, ... [and (2) ] determining indigence by proof of total destitution violates fundamental fairness and

[ (3) ] creates an impermissible barrier ... [to] access to the courts." Amended Compl. at 16 (Doc. # 34). The first allegation is indistinguishable from Plaintiff's Excessive Fines claim; accordingly, we need not consider it separately. *Armendariz v. Penman*, 75 F.3d 1311, 1325–26 (9th Cir.1996) (substantive due process claims not cognizable where claim arises under a specific textual provision of Constitution). Additionally, we need not reach the constitutional issues of Plaintiff's second and third claims, however, since as a factual matter it is undisputed that Washoe County does not employ the fact-finding method Plaintiff alleges. We discuss this further below.

### E. Equal Protection

Plaintiff's final claim is based upon the same averment as his latter two due process claims: "by creating the standard of total destitution to establish indigence, Washoe County impermissibly and arbitrarily establishes two classes of indigent persons." *Id.* at 17. As with his due process claims, though, the undisputed facts indicate otherwise.

## IV. Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995),

---

**6.** True, *Halper* employed the same language adopted in *Austin*—whether a payment is "solely remedial"—but it did so in *dicta*. *Ursery*, —— U.S. at——n. 2, 116 S.Ct. at 2145 n. 2.

cert. denied, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed. R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## A. Due Process and Equal Protection

As discussed above, Plaintiff's Fourteenth Amendment claims are predicated upon Washoe County's method of determining indigence. Defendant has submitted the affidavit of Charles T. Wiseman showing that its method of determining indigence for purposes of the statute is the same as is used for determining qualification for indigent medical and financial assistance programs. Wiseman Aff. at ¶¶ 2, 6 (citing Nev.Rev.Stat.Ann. § 428.015) (Doc. # 35, Ex. B). Plaintiff has offered no evidence in rebuttal. Consequently, there is a complete failure of proof concerning an essential element of Plaintiff's case, and Defendant is entitled to summary judgment on these claims.[7]

## B. Excessive Fines and Double Jeopardy

As discussed above, the fundamental inquiry for Double Jeopardy purposes is whether the payments Grove made were disproportionate to Defendant's costs. The factual inquiry for Excessive Fines purposes is not so clear, however. In *Austin* the Supreme Court expressly declined to articulate a test for excessiveness, and the Ninth Circuit's test (crafted in response to *Austin*) was fashioned with forfeitures in mind. 509 U.S. at 622–23, 113 S.Ct. at 2812–13; *U.S. v. Real Property Located in El Dorado, California*, 59 F.3d 974, 981–87 (9th Cir.1995).

Nonetheless, the *El Dorado* test is readily adaptable to the present circumstance. In *El Dorado*, the Court adopted a two pronged approach to analyzing excessiveness: the forfeited property must have a nexus with the crime committed, and the forfeiture must be "grossly disproportionate given the nature and extent of [the forfeitee's] culpability." 59 F.3d at 982–85. We note four significant features of this test. First, the "nexus" prong is plainly immaterial to a civil reimbursement. Second, there appears to be no avenue to weigh the costs to the government, as there is in Double Jeop-

---

7. We can only speculate as to why Plaintiff did not offer evidence in rebuttal. Although a court must give some plaintiffs notice that an opposition to a summary judgment motion must be supported by specific evidence, Mr. Grove (whose counsel is a seasoned civil rights litigator) is not one of those plaintiffs. *Klingele v. Eikenberry*, 849 F.2d 409, 411–12 (9th Cir.1988).

ardy disproportionality analysis; this is explained by the Court's observation that the "owner's culpability is relevant because it is the owner who is punished by the forfeiture." *Id.* at 986. Third, the burden of proving "gross disproportionality" is on the forfeitee. *Id.* at 985. Fourth, unlike in forfeiture cases, the deprivation here is money rather than personalty or realty. Based on these observations, and by more or less substituting the words "debt" or "payment" for "forfeiture" in the text of *El Dorado,* we adopt the following test for excessiveness: to prove that a civil reimbursement debt is excessive, the burden is on the plaintiff to show that the size of the debt is grossly disproportionate to his criminal culpability. *See El Dorado,* 59 F.3d at 985.

We must therefore apply the two tests, for Eighth Amendment excessiveness and Fifth Amendment disproportionality, in light of Grove's two possible financial circumstances, indigence and non-indigence. Indigence is trivial: if Grove is truly indigent, he owes nothing, he need not pay Defendant's bill, and we may safely say that a debt of zero dollars is neither excessive nor disproportionate.

■ As for non-indigence, it is undisputed that Plaintiff owes at most $630.00, based on 21 days in jail at $30.00 per day. Opp'n at 6, 12 (Doc. # 36); Statement (Doc. # 34, Ex. 5). Under Double Jeopardy analysis, the size of the debt must not be disproportionate to the damage caused to the government. Plaintiff alleges that the pertinent "damage" is the damage caused by his failure to pay his traffic fine. Amended Compl. at ¶ 62 (Doc. # 34). We disagree, since the statute is clearly directed toward recovering the costs resulting from incarceration, not the costs resulting from contempt of court (or any other crime). That is, Plaintiff caused damage to the government both by violating the law and by burdening the taxpayers with the cost of supporting him while in jail, and his debt is only for the latter. Under this analysis, and given the undisputed facts, we see no way that a reasonable jury could find $630.00 disproportionate to the government's damages. It is proportional to the length of Plaintiff's imprisonment and $30.00 is not an unreasonable daily charge (though there is no evidence of the government's actual daily expenses). Consequently, the undisputed facts make clear that there is no legally sufficient evidentiary basis to find for Plaintiff on his Double Jeopardy claim, and summary judgment is appropriate.

■ As for excessiveness, the total debt is not grossly out of proportion with fines typical in contempt of court cases. Nev.Rev. Stat.Ann. § 22.100 (maximum $500 fine for contempt). Moreover, it is not grossly out of proportion with the $900.00 fine which was the predicate for Plaintiff's contempt conviction in the first place. Mot. to Dismiss at 7 (Doc. # 18). As with his Double Jeopardy claim, the undisputed facts make clear that there is no legally sufficient evidentiary basis to find for Plaintiff on his Excessive Fines claim.

### CONCLUSION

We have grave doubts that implementing the statute is worth the administrative expense involved. This is particularly true since Washoe County has "written off" over $23,000.00 in debt since the program's inception. Wiseman Aff. at 3 (Doc. # 35, Ex. B). Nonetheless, the statute is not unconstitutional, at least not on the bases Plaintiff alleges. It can hardly be doubted that Mr. Grove has suffered because of his poverty, and he appears to have at least colorable grounds on which to have his contempt of court sentence overturned. If he does succeed in overturning it, the statute itself provides that he cannot be billed for the cost of his incarceration. Nev.Rev.Stat.Ann. § 211.241. To accomplish this, it appears he will simply have to petition for habeas corpus; a § 1983 action is not the proper method for gaining relief.

*IT IS, THEREFORE, HEREBY ORDERED THAT* Defendant Washoe County's motion (Doc. # 35), styled a motion to dismiss or in the alternative for summary judgment, is *GRANTED.*

*IT IS FURTHER ORDERED THAT* the Clerk shall enter judgment accordingly.